UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br>ANTONIO MOGROS,<br><br>Defendant. | Case No. 3:16-cr-00051-MMD-VPC<br><br>ORDER |

**I.   SUMMARY**

Defendant Antonio Mogros ("Mogros") was charged with three counts related to the possession of a firearm and possession with intent to distribute controlled substances after police executed a search warrant on his motel room. (ECF No. 4.) Before the Court is Mogros' Motion to Suppress ("Motion"). (ECF No. 17.) The government filed a response (ECF No. 24) to which Mogros replied (ECF No. 30). The Court held an evidentiary hearing on January 31 and February 3, 2017 ("Hearing"). (ECF Nos. 41, 43.) The Court also allowed the parties to submit post-hearing briefs summarizing their arguments. (ECF Nos. 48, 49.) After the first day of the Hearing, Mogros filed a Motion to Disclose Confidential Informant's File. (ECF No. 42.) The government filed a response to this motion (ECF No. 51) and Mogros filed a reply (ECF No. 52). For the reasons discussed herein, both motions are denied.

**II.   RELEVANT FACTUAL BACKGROUND**

The following facts are taken from the exhibits attached to the briefing relating to the Motion and the evidence presented at the Hearing.

### A. The Tip and Setup

On August 15, 2016, detectives with the Regional Crime Suppression Unit ("RCSU") — a multi-agency law enforcement program housed at the Sparks Police Department — arrested Christopher Wilkins. Wilkins, who was wanted for burglary, had been convicted of three other theft-related felonies and admitted to using methamphetamine and heroin daily. (ECF No. 24-1 at 7.) In an effort to help himself, Wilkins told Detective Tindall that his supplier was a short Hispanic man named Antonio. (ECF No. 24-1 at 7.) Detective Tindell, who was familiar with Antonio Mogros, showed Wilkins a picture of Mogros and asked if he was the man to whom Wilkins was referring. (*Id.*) Wilkins confirmed that Mogros was the man from whom he purchased methamphetamine and heroin over the last few months. Wilkins also informed Detective Tindall that Mogros was staying at the Aloha Inn ("Aloha Inn" or "Motel") — a motel in Sparks. (*Id.*) Another RCSU detective called the Aloha Inn and confirmed that Mogros was staying there and was registered to room #334. (*Id.*)

Detective Tindall and the other members of the RCSU devised a plan for what they call a "Narcotic Rip." The plan involved having Wilkins call Mogros to set up a sale while detectives monitored the Aloha Inn. (*Id.* at 7-8.) Then, before Mogros reached the point where the sale was to take place, he would be stopped and arrested by RCSU.

After members of RCSU arrived at the Aloha Inn and began observing room #334, Detective Tindall had Wilkins call Mogros and listened in on the call. Mogros answered and Detective Tindall recognized his voice because he had heard Mogros on a number of previous occasions. Mogros agreed to sell Wilkins one ounce of methamphetamine and one ounce of heroin. He told Wilkins to come to his room at the Aloha Inn, which he identified as room #334. (*Id.* at 8.) Wilkins then ended the call. Detective Tindall informed Wilkins that RCSU wanted to lure Mogros away from the Motel, and had Wilkins call back. After a few calls back and forth, Mogros agreed to meet Wilkins at the Nugget Casino ("the Casino") in Sparks. (*Id.*)

///

### B. Surveillance and Arrest

Detective Tindall informed the RCSU members who were positioned outside of the Aloha Inn about the deal. (*Id.*) About ten minutes after the call, the RCSU detectives observed Mogros leave his motel room and walk to a local convenience store. (*Id.* at 9.) A green Lincoln eventually pulled up to the convenience store, and after talking to the driver and heading back into the store momentarily, Mogros entered the vehicle. The Lincoln drove back to the Aloha Inn and the driver and Mogros exited the car and entered room #334. After several minutes, the two left room #334 and walked back to the Lincoln. (*Id.*) The Lincoln left the Aloha Inn and headed west on the freeway, in the general direction of the Casino.

Detective Tindall contacted Detective Bare and requested that he pull over the Lincoln. At this point, Detective Tindall testified that he believed that probable cause existed to arrest Mogros for the drug sale and had planned to arrest Mogros after the vehicle was stopped. Detective Bare ran the vehicle's plates and discovered the registration had been suspended. (ECF No. 42-2 at 3.) He followed the vehicle as it exited the freeway near the Casino, and turned north on Pyramid way, heading away from the Casino. The Lincoln then turned onto another street, and Detective Bare activated his emergency lights. (*Id.*) The Lincoln sped up momentarily and turned onto another street, before pulling over and stopping quickly. Officer Bare believed this behavior indicated that the occupants were either hiding contraband or preparing to ambush or flee. (*Id.*) Detective Bare exited his car and approached the Lincoln. He confirmed Mogros was in the passenger seat, drew his firearm, and ordered both Mogros and the driver to exit the vehicle with their hands up. (*Id.*) Detective Bare handcuffed Mogros and performed a pat down search. While patting down the area around Mogros' groin, Detective Bare felt "packaging material" filled with "a rock like material." (*Id.* at 4.) Detective Bare asked Mogros what the object was and Mogros responded "my dick." (*Id.*)

At some point after Detective Bare pulled over the Lincoln, Detective Tindall had arrived on the scene. After discovering the suspected material on Mogros, Detective Bare

handed him over, still in cuffs, to Detective Tindall. Detective Bare informed Detective Tindall that he suspected Mogros had a bag of crystal meth in his groin area. (*Id.*) Detective Tindall did not advise Mogros of his *Miranda* rights, but said something along the lines of "man up and tell me what it is." In response, Mogros told Detective Tindall that he had a bag of methamphetamine and a bag of heroin.[1] (*Id.*) According to Detective Tindall, Mogros then gave him permission to retrieve the drugs. (ECF No. 24-1 at 10.) Detective Tindall unbuttoned Mogros' pants and found three plastic bags in a sleeve in Mogros' boxer-briefs. One bag contained about 29 grams crystal meth, and the other two contained a combined 31 grams of heroin. (ECF No 24-1 at 10.) Detective Tindall also found $1,395 in the pocket of Mogros' jeans and a piece of paper which Detective Tindall believed to be a "pay/owe sheet" — a record of debts and payments from his contraband sales. (*Id.*) The detectives decided to call for the vehicle to be towed based on the fact that it was being used in the commission of a felony. (*Id.* at 11.) They searched the vehicle and found an additional 18.9 grams of methamphetamine and .6 grams of heroin. (*Id.*) The detectives arrested Mogros and the driver for trafficking, possession for sale, and possession of a controlled substances. (*Id.*)

### C. Search of Motel Room

Several of the detectives went to the Aloha Inn, where Detective Gott had been conducting a surveillance on room #334. One of them asked the management of the Motel for permission to perform a canine search, and the management granted permission. Detective Bare took his canine, Jamie, to the third floor walkway. Jamie sniffed at the doors of rooms around room #334. When she reached room #334, her behavior changed and she began sniffing intently at the bottom of the door and the air conditioning unit. She then gave a final response by sitting, looking at the door to room #334, and looking back at Detective Bare. (ECF No. 24-2 at 4.)

///

---

[1] The government concedes that Mogros' statement was obtained in violation of his Miranda rights and does not seek to admit his statement. (ECF No. 24 at 9 n. 2.)

At 9:37 PM, after the canine alert was relayed to him and with information gathered over the day and obtained from Mogros' arrest, Detective Gott called a deputy district attorney to start the search warrant application process. The deputy district attorney did not answer, so Gott left a voicemail message. (ECF No. 24-3 at 3.)

Around the same time, a car pulled into the Motel parking lot and a woman got out and began to walk towards room #334. (ECF No. 24-2 at 5.) The detectives became worried that the woman would attempt to contact anyone who had remained in #334 and alert that person of the their presence.[2] (ECF No. 24-1 at 12.) They decided to knock on the door to room #334.

The detectives' accounts of the next few moments are not entirely consistent. Generally, a woman, Cassandra Hutton, answered and Detective Bare removed her from the room, leaving the door open behind her.[3] The remaining detectives were able to see into the room and allege that they saw drugs, the handle of a firearm, and various items related to the sale of controlled substances. The detectives performed a protective sweep of the room and secured it while Detective Gott contacted the deputy district attorney and proceeded to telephonically testify in support of a search warrant to a Justice of the Peace. (ECF No 17-2.) The Justice of the Peace granted the warrant, and the detectives entered the room and found a handgun, ammunition, heroin, methamphetamine, marijuana, a scale, a pay/owe sheet, and various other items. (ECF No. 24-1 at 13-14.)

Mogros was charged with one count of being a felon in possession of a firearm, one count of possession with intent to distribute a controlled substance, and one count of possessing a firearm in furtherance of a drug trafficking crime. (ECF No. 1.) Mogros now

---

[2]Detective Gott testified that he met the woman as she came back down the stairs and she recognized him. He had previously arrested her for drug related charges and credit card fraud.

[3]Ms. Hutton testified at the Hearing, but during cross-examination, she asserted her Fifth Amendment rights in response to certain questions, including whether she had been using controlled substances on the day in question, whether she was aware there were drugs in the room, and whether the content of the statement that she provided to the detectives was accurate. Based on Ms. Hutton's refusal to answer these questions, the government moved to strike her testimony, which the Court granted.

moves to suppress the evidence found during his arrest and the search of his motel room. He also seeks a hearing under *Franks v. Delaware,* 438 U.S. 154 (1978) based on alleged inaccuracies and misrepresentations in the testimony offered to obtain the search warrant.

### III. DISCUSSION

In support of his Motion, Mogros argues that several members of RCSU violated the Fourth Amendment in various ways during the events of August 15, 2016. As a result, Mogros contends that much of the testimony in support of the search warrant is based on illegally obtained evidence. Accordingly, the evidence derived from his arrest must be suppressed and the search warrant cannot be upheld, which necessarily result in suppression of the evidence obtained in room #334.

First, Mogros alleges a number of problems with the stop of the Lincoln vehicle and search of his person. He argues that the detectives did not have a basis for conducting a high risk traffic stop or performing a pat down search, and that he did not voluntarily consent to turning over the drugs in his pants. Next, Mogros argues that the canine search and subsequent warrantless entry into the motel room were both unconstitutional.

In evaluating the Motion, the Court must deal with two overlapping sets of facts. While evaluating the detectives' behavior on the day of the arrest, the Court takes into account all of the information known by the detectives, including their observations that day and their knowledge of Mogros' previous activity. However, in evaluating the legitimacy of the search warrant, the Court is restricted to the testimony offered in support of the warrant — minus any testimony that the Court determines is based on improperly obtained evidence.[4] For the reasons discussed below, the Court finds that the drugs found

---

[4]This means that in evaluating the search warrant, the Court must disregard certain facts which might support a probable cause determination, but were never presented to the Justice of the Peace. *See United States v. Taylor*, 716 F.2d 701, 705 (9th Cir. 1983) ("The validity of a search warrant depends upon the sufficiency of what is found within the four corners of the underlying affidavit.") In this case, the relevant facts are contained in a transcript of testimony before a Justice of the Peace, rather than an affidavit. (ECF No. 17-2.)

on Mogros after the detectives pulled the Lincoln over were legally obtained and therefore properly relied upon by the Justice of the Peace. The Court also finds that even absent any information obtained from the canine search and the warrantless entry into room #334, the testimony in support of the search warrant contained enough information to justify a finding of probable cause by the Justice of the Peace — rendering it unnecessary to decide the legality of the canine search or the warrantless entry.

### A.     Arrest and Search

Mogros offers two main arguments with respect to his arrest and search. First, he argues that there was no basis on which to perform a pat down search, and even if there was, retrieving the plastic bags from his underwear exceeded the scope of a permissible search. Next, Mogros argues that the traffic stop itself was unlawfully extended in violation of *Rodriguez v. United States*, 135 S.Ct. 1609, 1615 (2015). Both arguments fail because, though Detective Bare identified an expired registration as the justification for the stop, the detectives were also justified in pulling the vehicle over to arrest Mogros based on the suspected sale of methamphetamines and heroin.

The Fourth Amendment prohibits unreasonable searches and seizures by the government. U.S CONST. amend IV. "Warrantless searches by law enforcement officers 'are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *United States v. Cervantes*, 678 F.3d 798, 802 (9th Cir.2012) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One exception to this general rule is a search made incident to a lawful arrest. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). This exception allows "a police officer who makes a lawful arrest [to] conduct a warrantless search of the arrestee's person and the area 'within his immediate control.'" *Davis v. United States*, 564 U.S. 229, 232 (2011) (citing *Chimel v. California*, 395 U.S. 752, 763 (1969)). Among the permissible purposes of a search incident to arrest is to "prevent concealment or destruction of evidence." *United States v. Smith*, 389 F.3d 944, 951 (9th Cir. 2004). In contrast to a pat down based on officer safety, it can "involve a relatively extensive exploration of the person." *Terry v.*

*Ohio*, 392 U.S. 1, 25 (1968). A search incident to arrest may precede a formal arrest if the arresting officers have probable cause to arrest a suspect and the formal arrest follows quickly. *Id*; *see also United States v. Powell*, 483 F.3d 836, 839 (D.C. Cir. 2007) (collecting similar holdings from other circuits).

"Probable cause for a warrantless arrest exists if under the totality of the facts and circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime. *United States v. Fixen*, 780 F.2d 1434, 1436 (9th Cir. 1986) (internal quotations omitted). The Court agrees that the officers had probable cause to arrest Mogros when they pulled over the car. At that time, they knew that Mogros had been identified by Wilkins, Detective Tindall had listened to the phone conversations between Wilkins and Mogros wherein Mogros agreed to sell Wilkins methamphetamines and heroine, detectives had observed Mogros' motel room and seen several people approach and leave in a short amount of time (behavior they believed was consistent with drug sales), and Mogros left the room and travelled in the general direction of the Casino after talking to Wilkins. Given these facts, a reasonable person would conclude there was a fair probability that Mogros was engaged in the sale of controlled substances.

Indeed, Detective Tindall testified that he intended to arrest Mogros for the drug sale after the car was pulled over. Detective Tindall further testified that the decision to pull over the Lincoln was based in part on a suspended registration but also simply on Mogros' presence in the vehicle. He went on to testify that he believed Detective Bare had probable cause to search Mogros, including in the area around the crotch. Therefore, the proper framework for evaluating both Detective Bare and Detective Tindall's searches of Mogros is under the search incident to arrest line of cases based on *Chimel v. California*, 395 U.S. 752, rather than officer safety frisk line of cases based on *Terry v. Ohio*, 392 U.S. 1. Removing the plastic bags from Mogros' underwear falls within the scope of a properly conducted search incident to arrest. *See e.g. United States v. Thomas*, 512 F.3d 383, 387 (7th Cir. 2008) (upholding a similar search incident to arrest

8

which uncovered cocaine in a defendant's underwear and noting "a full search of the person" was reasonable); *United States v. Willis*, No. 05-CR-6123L, 2006 WL 2239738, at *6 (W.D.N.Y. Aug. 4, 2006) (plastic bag of cocaine found inside defendant's underwear was found within the scope of a lawful search incident to arrest); *United States v. Gordon*, 895 F. Supp. 2d 1011, 1026 (D. Haw. 2012) (search of defendant's duffle bag and wallet fell within the scope of a search incident to arrest).

For these reasons, the Court finds that the drugs retrieved from Mogros' underwear were found lawfully during a search incident to arrest, and consequently the Justice of the Peace properly relied on this fact when determining that probable cause supported the issuance of the search warrant.

**B.  Search Warrant**

Mogros argues that, after all of the improper evidence is removed from the testimony in support of the search warrant, what remains consists of only eleven lines that do not show any nexus between drug dealing and room #334, and therefore do not support a probable cause finding. (ECF No. 49 at 4-7.) However, as discussed below, the Court finds that Detective Gott provided enough information based solely on the evidence collected up to and including the arrest and recovery of drugs from Mogros' underwear for the Justice of the Peace to find probable cause to issue the search warrant.

Probable cause exists when the testimony in support of a search warrant shows "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983). In reviewing a search warrant on probable cause grounds this Court is limited to the information contained within the "four corners of the underlying affidavit." *Taylor*, 716 F.2d at 705. The evidence provided to the Justice of the Peace must have been "legally sufficient and reliable." *Crowe v. Cty. of San Diego*, 608 F.3d 406, 434-35 (9th Cir. 2010) (quoting *Franklin v. Fox*, 312 F.3d 423, 438 (9th Cir. 2002). If the court determines some of the evidence relied upon was unlawfully collected, it must disregard that evidence. However, "[t]he mere inclusion of tainted evidence in an affidavit does not, by itself, taint the warrant or

the evidence seized pursuant to the warrant." *United States v. Vasey*, 834 F.2d 782, 788 (9th Cir.1987) (citing *Wong Sun v. United States*, 371 U.S. 471, (1963). Instead, the court must "excise the tainted evidence and determine whether the remaining, untainted evidence would provide a neutral magistrate with probable cause to issue a warrant." *Id.*

Aside from any evidence obtained after the canine search of room #334, Detective Gott testified to the following in support of the search warrant: 1) Wilkins identified Mogros as his dealer; 2) police received an anonymous tip that Mogros was staying in room #334 of the Aloha Inn; 3) Wilkins and Mogros set up a deal wherein Wilkins would purchase methamphetamine and heroine; 4) Mogros informed Wilkins that he had just re-upped his supply; 5) officers observed Mogros leave his motel room (#334) after the deal was made; 6) officers stopped the vehicle Mogros was in and recovered 30 grams of meth and 31 grams of heroine on Mogros; 7) Aloha Inn staff confirmed room #334 was registered to Mogros. (ECF No. 17-2 at 7-11.)

The Court finds Gott's testimony about evidence obtained before the canine search was sufficient to support the Justice of the Peace's conclusion that there was a fair probability evidence of a crime would be found in room #334. Contrary to Mogros' argument, the Justice of the Peace was presented with multiple grounds on which to find a nexus between the sale of controlled substances and room #334. Mogros was placed in room #334 by motel staff, an anonymous tip, and detectives' same-day observations. After agreeing to sell Wilkins methamphetamine and heroin and leaving the room, Mogros was arrested, and methamphetamine and heroin were found on his person. The Ninth Circuit has upheld search warrants based on similar amounts of evidence. *See United States v. Nance*, 962 F.2d 860, 864 (9th Cir. 1992), as amended (May 18, 1992) (probable cause established by confidential informants indicating that defendant sold drugs from home during controlled buys and was involved in extensive drug distribution). In addition, Detective Gott also informed the Justice of the Peace that Mogros indicated he had just re-upped — or stocked up on his inventory. All of this information adds up to create a fair probability that officers would find drugs or other evidence of drug trafficking in room #334.

Therefore, the search warrant was properly issued and the evidence found during the search of the Motel room need not be suppressed.[5]

### C.     Franks Hearing

Lastly, Mogros argues that Detective Gott's testimony in support of the application for the search warrant was inaccurate and misleading, and therefore require a *Franks* hearing. Specifically, Mogros argues that Detective Gott failed to adequately describe Wilkins and the context of his cooperation, misrepresented the timing of the phone calls between Wilkins and Mogors, inaccurately described Detective Bare's entry into the Motel room and his subsequent observations, and incorrectly described the rental log for the Motel room. Mogros also asks that the Court compel the government to provide Wilkin's criminal history, because according to Mogros, that history was material to any probable cause finding. (ECF No. 42 at 2.)

Defendant argues that Detective Gott was impeached several times during the Hearing. Certainly Detective Gott's testimony about the entry into the room and the items found in plain sight, in particular, were inconsistent with other evidence, including photographs of items in room #334 and Detective Bare's testimony. However, as discussed above, the Court does not find these inconsistencies, or any other omissions, material to a finding of probable cause. Omissions related to Wilkins' addiction or criminal history, for example, are not material because his testimony was corroborated by further investigation, including monitored calls with Mogros, which was presented to the Justice of the Peace.

///

---

[5]Mogros also argues that at the very least the firearm found in the room must be suppressed because there was no independent probable cause relating to the gun and ammunition. Even assuming, as the Court has done, that the testimony about the items in plain view must be excised from the testimony offered in support of the search warrant, the firearm and ammunition would still have been recovered when the officers executed the search warrant. Therefore, whether the gun was specifically listed in the warrant or not, it is admissible based on the inevitable discovery doctrine, which states that if, "by following routine procedures, the police would inevitably have uncovered the evidence, then the evidence will not be suppressed despite any constitutional violation." *United States v. Young*, 573 F.3d 711, 721 (9th Cir. 2009) (internal quotations omitted).

11

As the government rightly argues, the added investigation here makes this case distinguishable from *United States v. Hall*, 113 F.3d 157 (9th Cir.1997). In *Hall*, the only connection between a suspect and criminal activity was the word of an informant. Here, Wilkin's word kicked off an investigation that produced several pieces of information confirming his description of Mogros as his supplier. Wilkins' criminal history does nothing to change Detective Tindall's testimony about the phone calls between Wilkins and Mogros, the anonymous tip and motel employee testimony confirming Mogros was in room #334, or the drugs eventually found on Mogros. Therefore, under the circumstances here, Wilkins' criminal history would not have been material to a probable cause determination and neither a *Franks* hearing nor an order compelling the government to produce his criminal history is warranted.

## IV.  CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Mogros' motions.

It is therefore ordered that Defendant's Motion to Suppress (ECF No. 17) is denied.

It is further ordered that Defendant's Motion to Disclose Confidential Informant's File In Camera (ECF No. 42) is denied.

DATED THIS 23rd day of February 2017.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE